DAVID W. MEADOWS (State Bar No. 137052)
LAW OFFICES OF DAVID W. MEADOWS
1801 Century Park East, Suite 1235
Los Angeles, California  90067
Tel : (310) 557-8490
Fax : (310) 557-8493
Email: david@davidwmeadowslaw.com
[Proposed] Counsel to the Debtor and Debtor
In Possession

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

(LOS ANGELES DIVISION)

| | |
|---|---|
| In re<br><br>CELTIC PUBS LLC,<br><br>    Debtor and Debtor in Possession | Case No. 2:15-bk-16594-BB<br><br>Chapter 11<br><br>**DECLARATION OF VICENTE TAPIA IN SUPPORT OF FIRST DAY MOTIONS REQUESTING SHORTENED NOTICE**<br><br>Judge:    Hon. Sheri Bluebond<br><br>Hearing:    [TO BE SET]<br>Time:      [TO BE SET]<br>Place:     Courtroom 1475<br>           255 East Temple Street<br>           Los Angeles, CA  90012 |

1

**I, Vicente Tapia, declare as follows:**

1.      I am the Manager of CELTIC PUB LLC, dba Dublins Irish Whisky Pub, the Chapter 11 debtor and debtor in possession in the above-entitled bankruptcy proceeding (the "Debtor").  As such, I have authority to make this declaration on the Debtor's behalf.  I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true.  If called as a witness, I could and would competently testify to the matters stated herein.

2.      This declaration is made in support of the Debtor's:  1)  *Notice Of Motion And Motion On Shortened Notice For Order Authorizing Debtor To Pay Prepetition Wages, Employee Deductions, And Related Relief; Memorandum Of Points And Authorities In Support Thereof;  and  2), Notice Of Motion And Motion On Shortened Notice For Authority To Pay, Pursuant To Sections 105(a), 363(b), 503(b) And 507(a) Of The Bankruptcy Code, Prepetition Claims Or A Portion Of Pre-Petition Claims Of Certain Vendors And Suppliers Of Goods That Are Entitled To Administrative Expense Priority"* (the "First Day Motions").

**A.      Events Preceding the Bankruptcy**

3.      The Debtor operates "Dublins Irish Whiskey Pub" (the "Pub"), in downtown Los Angeles. It is an ordinary small business in a number of ways.  For instance, unlike the case where an army of attorneys and accountants perform due diligence and carefully document acquisitions of financially significant business entities, that is not what happens in the case of many small business acquisitions, and it is not what happened in the case of the Debtor.    In August, 2012, MB Entertainment Group, LLC ("MBEG"), of which Vicente Tapia ("Tapia") is the sole member and manager, acquired a controlling interest of the Debtor.    Over the course of ensuring years, disputes have arisen among the current

members, former members, and even alleged members whose interest or interests in the Debtor were apparently wholly unknown to MBEG at the time of its acquisition.

4. The problems with the ownership acquisition led to problems in the operations and even in financing of the Pub. These problems have been, in a manner of speaking, "distilling" for several years and now are at a head. For years, the Pub has struggled with cash flow while paying down settlements of disputed claims that were apparently unknown to and by MBEG at the time of its acquisition. In any case, there is a backlog of debt, whether it was disclosed or known to MBEG or not. Further, until and unless the membership disputes are resolved, MBEG is not able to bring in new financing to upgrade the Pub and improve its profitability.

5. Second, there has been a long standing fight between and among the Debtor's members. The members fall into two camps. One camp is MBEG, whose sole member is Tapia, the Manager of the Debtor. The Debtor and MBEG have been represented by Greenberg Glusker Fields Claman & Machtinger LLP. The other camp consists of the following individuals: Anthony Burch, Esq., Ben Germono, Charles Tover, Dave Vij, Ernest Moss, Joel Regala, Mark Knight, Mark Moss and Sally Harte (the "Plaintiff Members"). The Plaintiff Members are represented by Thomas K. Agawa, Esq., of Agawa Law, APC ("Mr. Agawa"). The Plaintiff Members, as represented by Mr. Agawa, commenced litigation against the Debtor, Tapia, MBEG, affiliates of MBEG, and derivatively as majority members on behalf of the Debtor, in Superior Court of the State of California, Case Number BC536641 (the "State Court Litigation"). The State Court Litigation has its own complexity, including arbitration proceedings, disputes over the scope of arbitration, and even an appeal of a Superior Court ruling relating arbitration.

6. The Chapter 11 case was commenced for several reasons. First, it was commenced voluntarily by the Debtor on the eve of a hearing in the Superior Court on the appointment of a receiver. The Debtor's position is appointment of a receiver to take over the Pub is more likely than not to result

in the Pub failing and closing in short order. A receiver comes in, and everything changes. At least in a bankruptcy, the same faces stay, and employees and customers feel that nothing has changed. If there are any allegations of cash or financial mismanagement, the scrutiny enabled by the bankruptcy process, and the accounting and reporting required by the Office of the United States Trustee, provide and in fact require transparency. A chapter 11 proceeding, where issues are addressed in a timely manner, is much more likely to result favorably for creditors and investors, as well as for customers, compared to appointing a receiver. The receiver remedy is appropriate and helpful in many circumstances, but not necessarily in the case of a struggling small business such as this one.

7. Second, the issues and allegations raised in the State Court Action are material and have to be addressed and resolved. The disputes are not just disputes among members; they are affecting the operation, financing and the viability of the Debtor. The disputes have gone on too long without resolution. The Chapter 11 will be a forum for the resolution of the issues and disputes.

8. Third, is the Debtor has a lot of debt that it has to deal with. Claims have to be examined, and there is a lot of tax debt. It is possible that a global settlement can be reached among the members, and that might be sufficient to support a later motion for a voluntary dismissal of the case. Alternatively, particularly utilizing this Court's provisions for the efficient confirmation of a small business case, a chapter 11 plan may have to be confirmed, providing for the payment over time of priority tax debt.

9. For these reasons, the Debtor commenced this case on April 27, 2015.

**B.    Payment of Prepetition Payroll**

10. As of the Petition Date, the Debtor employs forty-five (45) individuals, servicing the Pub's bar (both "front of" bar and "back of" bar), bus-personnel, cooks, dishwashers, food runners (waiters), host, maintenance, and managers. In addition, the Pub pays for two (2) independent consultants (neither of whom are affiliated with the Debtor's insiders); three (3) security guards, and one (1) DJ. The total

4

payments that are due or are coming due are shown on **Exhibit 1,** attached hereto. The total gross pay is $15,520.01, employer taxes totals $2,902.17, for a total cost to the Debtor of $18,422.18. In addition, there are some outstanding payroll checks. The Debtor request that these, too, be authorized as post-petition payments.[1] The outstanding payroll amounts are to twenty (20) individuals (identified in detail on Exhibit 1), and total $2,508.97. In addition, there are some outstanding payroll checks. The Debtor request that these, too, be authorized as post-petition payments.[2] The outstanding payroll amounts are to twenty (20) individuals (identified in detail on Exhibit 1), and total $2,508.97. Therefore, I request authorization to pay pre-petition wages in the total amount of **$18,151.50.**[3]

      11.    On behalf of the Debtor, I request authority to continue with the Debtor's payroll schedule in the ordinary course of its business and to pay all prepetition wages as planned on the dates indicated above. In all instances, no Employee will be paid more than $12,475 in Prepetition Wages allowed as a priority wage claim under Bankruptcy Code §507(a)(4). The Debtor believes that the costs associated with paying Prepetition Wages are relatively minimal compared with the damage to the Debtor's estate that would follow if Employees morale were harmed by the Debtor's failure to meet its payroll obligations.

      12.    Failure to make payroll would be an enormous blow to employee morale, and would very likely impose severe hardship on the employees, who rely on their salaries to pay their own bills, rent,

---

[1] The Debtor will need to re-issue checks post-petition, because outstanding checks will be dishonored by the bank, which has closed the Debtor's prepetition accounts pursuant to the requirements of the Office of the United States Trustee.

[2] The Debtor will need to re-issue checks post-petition, because outstanding checks will be dishonored by the bank, which has closed the Debtor's prepetition accounts pursuant to the requirements of the Office of the United States Trustee.

[3] This amount consists of the total payable to the employees ($18,422.18) plus the amounts previously paid to the employees, but whose checks will not clear ($2,508.97).

mortgages, etc. It would almost certainly give rise to outrage among employees justifiably so - affecting productivity and the service provided to the restaurant's customers. In many cases, employees would leave and seek employment elsewhere. If any of this were to happen, the Debtor's estate would suffer immediate and irreparable harm.

13.   The Debtor simply cannot function without its employees. It would be impossible to train new employees en-masse without negatively impacting the business (assuming that the Debtor could even attract new employees if it developed a reputation for not making payroll). In short, there is a strong likelihood that the business would have to shut down if it failed to make payroll. Last, it is just not right to have employees suffer on account the bankruptcy filing.

C.   **Payment of Critical Vendors**

14.   In the ordinary course of operations, the Debtor relies on certain vendors for the supply of certain goods and services. By this Motion, the Debtor seeks entry of an order authorizing the Debtor, in its sole discretion, to pay prepetition amounts due to those suppliers (the "Critical Vendors"). Most, if not all, of those Critical Vendors are entitled to administrative expense status pursuant to section 503(b)(9) of the Bankruptcy Code, to the extent they represent the value of goods received by the Debtor within the twenty (20) days prior to the Petition Date. As of the Petition Date, the Debtor estimate that the claims of Critical Vendors **total $20,238.24**. This Motion requests approval of a rounded number, a total of **$20,500.00, but to be paid only to the critical vendors the Debtor has identified which make up the $20,238.24. None of the payments will be made to any insider of the Debtor or any affiliate of the Debtor.**

15.   It may seem surprising to have "critical vendors" for a pub, but the reality is, it's true. For instance, the liquor is distributed by providers who have exclusive brands. Although it is possible to get other brands from new providers, it still costs more than the relatively minor prepetition amounts that are

owed, plus the benefit of continuity of service to the customers. People "like what they like." This applies to baked goods as well as well as certain labels of liquor, which are provided by sole source provides. Current management has improved the quality of the cuisine. As something that is working now, the Debtor does not want to change it. Other services that the Debtor deems critical are vendors who *could* be replaced, but not economically, and who provide the type of services that if discontinued, could and likely would result in the restaurant being shut down by the health department. Some of the amounts owed to these vendors is likely to be payable to those vendors under section 503(b)(9) in any event.

16. I believe this limited relief requested is necessary to avoid immediate and irreparable harm to the Debtor's estate if the Critical Vendors are not paid and as a result, discontinue supplying the Pub. The Debtor's business is such that it needs a regular, uninterrupted supply of goods and services. It also requires a regular supply of hygiene-related products and services necessary to keep the restaurant in compliance with applicable health and safety regulations, and its customers safe.

D. **Identification of Critical Vendors**

To ensure that only those vendors that provide goods and services that are actually essential to the Debtor's remaining business operations are the subject of the relief requested herein, I analyzed whether the vendor in question is a sole source provider, whether the Debtor receives advantageous pricing or other terms from a vendor such that replacing the vendor postpetition would result in significantly higher costs to the Debtor, and whether quality requirements, customer specifications, or relevant state and local authority specifications prevent the Debtor from obtaining products or services from alternative sources within a reasonable timeframe to prevent any material interruption in its business, and whether a vendor is likely to refuse to ship product or provide services to the Debtor post-

petition if its prepetition balances are not paid.   I am confident that this process has appropriately identified only those vendors that are critical to the estate and their near-term operational requirements.

Based on the foregoing considerations, I identified Critical Vendors whose cessation of services or provision of goods could cripple in short order the operation of the Pub.   I believe that the Critical Vendors will refuse to supply the Debtor post-petition unless some or all of these claims are paid, and that immediate replacement of the Critical Vendors would be impracticable or, in some cases, impossible. Without authority to pay the Critical Vendors, the Pub could be out of business in a week, if it does not pay these creditors, and thereby ensure the continued supply of liquor and other basic needs required for keeping a pub operating in a competitive environment.   One night shut down or out of alcohol, could easily be a death knell of the Debtor.

Keeping this list confidential may assist in reducing the number of prepetition claims of Critical Vendors that the Debtor must pay now in order to avoid interruption to key supplies.   Accordingly, a schedule of vendors is <u>not</u> attached to this Declaration.   Instead, a schedule will be provided on a confidential basis to the US Trustee's Office, to the chambers of the Court, if requested, and to any holder of a claim on the List of 20 Largest Claims.   <u>I represent that none of the requested payments are to any insider or affiliate of the Debtor, including to any of the Debtor's members, such as MBEG (of which I am the sole member) and any of its affiliates</u>.

/ / /

/ / /

/ / /

/ / /

8

17.     Therefore, the Debtor is seeking authority to pay, at its discretion, the prepetition claims, or a portion of the prepetition claims of certain critical vendors in order to minimize disruption to its business. The Debtor is seeking authority to pay up to $21,500.00 to such vendors, almost half of which it is liable to have to pay under section 503(b)(9) of the Bankruptcy Code in any event.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 27th day of April, 2015 in Los Angeles, California.

see next page

_____

Vicente Tapia

17.  Therefore, the Debtor is seeking authority to pay, at its discretion, the prepetition claims, or a portion of the prepetition claims of certain critical vendors in order to minimize disruption to its business. The Debtor is seeking authority to pay up to $21,500.00 to such vendors, almost half of which it is liable to have to pay under section 503(b)(9) of the Bankruptcy Code in any event.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 27th day of April, 2015 in Los Angeles, California.

Vicente Tapia

# Exhibit 1

## Celtic Pubs LLC

| Employee Name | Pay Period | Position | Gross Pay | Employer Taxes | E | Total Cost | Net Amount |
|---|---|---|---|---|---|---|---|
| Becerral, Valentine | 4/13/15 to 4/26/15 | Bar Back | $124.29 | $18.04 | # | $142.33 | $107.86 |
| Powell, Sterlyng M. | 4/13/15 to 4/26/15 | Bar Back | $374.22 | $53.44 | # | $427.66 | $339.03 |
| **Total for Bar Back** | | | **$498.51** | **$71.48** | # | **$569.99** | **$446.89** |
| Adeeb, Victor | 4/13/15 to 4/26/15 | Bartender | $244.80 | $130.72 | # | $375.52 | $147.56 |
| Bucci, Frank A. | 4/13/15 to 4/26/15 | Bartender | $315.99 | $140.24 | # | $456.23 | $76.74 |
| Burnside, Daniel | 4/13/15 to 4/26/15 | Bartender | $345.42 | $122.34 | # | $467.76 | $254.70 |
| Kahn, Justin | 4/13/15 to 4/26/15 | Bartender | $343.89 | $148.67 | # | $492.56 | $114.50 |
| Lapitan, Maria Theresa | 4/13/15 to 4/26/15 | Bartender | $177.30 | $49.65 | # | $226.95 | $91.92 |
| Miller, Robert J. | 4/13/15 to 4/26/15 | Bartender | $262.08 | $84.34 | # | $346.42 | $135.81 |
| Moscarello, David J. | 4/13/15 to 4/26/15 | Bartender | $140.79 | $64.88 | # | $205.67 | $65.90 |
| Velazco, Luis | 4/13/15 to 4/26/15 | Bartender | $402.21 | $141.47 | # | $543.68 | $283.39 |
| **Total for Bartender** | | | **$2,232.48** | **$882.31** | # | **$3,114.79** | **$1,170.52** |
| Alcocer, Jesus A. | 4/13/15 to 4/26/15 | Bus Pers | $310.32 | $43.24 | # | $353.56 | $282.42 |
| Avina, Luis E. | 4/13/15 to 4/26/15 | Bus Pers | $447.03 | $59.24 | # | $506.27 | $388.33 |
| Mack, Billy B. | 4/13/15 to 4/26/15 | Bus Pers | $276.30 | $36.60 | # | $312.90 | $249.28 |
| Rodriguez, Nemorio | 4/13/15 to 4/26/15 | Bus Pers | $466.83 | $76.04 | # | $542.87 | $417.76 |
| Sanchez, Gilberto | 4/13/15 to 4/26/15 | Bus Pers | $514.76 | $68.20 | # | $582.96 | $419.89 |
| **Total for Bus Pers** | | | **$2,015.24** | **$283.32** | # | **$2,298.56** | **$1,757.68** |
| Alvarado, Delmer J. | 4/13/15 to 4/26/15 | Cook | $844.25 | $86.55 | # | $930.80 | $664.52 |
| Brisuela, Victor M. | 4/13/15 to 4/26/15 | Cook | $2,000.00 | $153.00 | # | $2,153.00 | $1,556.91 |
| Lopez, Daniel | 4/13/15 to 4/26/15 | Cook | $885.00 | $96.22 | # | $981.22 | $809.33 |
| Romero, Miguel A. | 4/13/15 to 4/26/15 | Cook | $432.75 | $57.33 | # | $490.08 | $392.09 |
| **Total for Cook** | | | **$4,162.00** | **$393.10** | # | **$4,555.10** | **$3,422.85** |
| Chiong, Mario | 4/13/15 to 4/26/15 | Dishwasher | $737.42 | $101.68 | # | $839.10 | $605.11 |
| Mendez, Orlando | 4/13/15 to 4/26/15 | Dishwasher | $730.80 | $96.82 | # | $827.62 | $668.33 |
| **Total for Dishwasher** | | | **$1,468.22** | **$198.50** | # | **$1,666.72** | **$1,273.44** |
| Soberanes, Oscar | 4/13/15 to 4/26/15 | Food Runner | $150.48 | $20.32 | # | $170.80 | $137.37 |
| **Total for Food Runner** | | | **$150.48** | **$20.32** | # | **$170.80** | **$137.37** |
| Plascencia, Hannah R. | 4/13/15 to 4/26/15 | Host | $166.90 | $22.12 | # | $189.02 | $152.63 |
| **Total for Host** | | | **$166.90** | **$22.12** | # | **$189.02** | **$152.63** |
| Rodriguez Limon, Miguel | 4/13/15 to 4/26/15 | Maintenance | $870.00 | $115.27 | # | $985.27 | $795.62 |
| **Total for Maintenance** | | | **$870.00** | **$115.27** | # | **$985.27** | **$795.62** |
| Hartsfield, Kyle | 4/13/15 to 4/26/15 | Manager | $1,625.00 | $124.31 | # | $1,749.31 | $1,209.94 |
| **Total for Manager** | | | **$1,625.00** | **$124.31** | # | **$1,749.31** | **$1,209.94** |
| Barajas, Anais | 4/13/15 to 4/26/15 | Server | $166.59 | $53.90 | # | $220.49 | $115.36 |
| Chavez, Veronica | 4/13/15 to 4/26/15 | Server | $279.81 | $103.03 | # | $382.84 | $144.88 |
| Cortez, Kevin | 4/13/15 to 4/26/15 | Server | $217.44 | $62.76 | # | $280.20 | $169.19 |
| Morales, Julio | 4/13/15 to 4/26/15 | Server | $423.90 | $122.89 | # | $546.79 | $51.69 |
| Moser, Shannon N. | 4/13/15 to 4/26/15 | Server | $241.83 | $74.81 | # | $316.64 | $160.14 |
| Ordonez, Monica | 4/13/15 to 4/26/15 | Server | $163.08 | $50.69 | # | $213.77 | $100.95 |
| Orozco, Kathy G. | 4/13/15 to 4/26/15 | Server | $109.89 | $45.85 | # | $155.74 | $80.30 |
| Robinson, Samantha D. | 4/13/15 to 4/26/15 | Server | $155.70 | $56.59 | # | $212.29 | $100.69 |
| Villalpando, Ambriell W. | 4/13/15 to 4/26/15 | Server | $334.80 | $124.98 | # | $459.78 | $183.02 |
| Wilson, Caroline C. | 4/13/15 to 4/26/15 | Server | $238.14 | $95.94 | # | $334.08 | $89.37 |
| **Total for Server** | | | **$2,331.18** | **$791.44** | # | **$3,122.62** | **$1,195.59** |
| **Totals for Employees** | | | **$15,520.01** | **$2,902.17** | # | **$18,422.18** | **$11,562.53** |
| **Independent Contractors** | | | | | | | |
| Vic Stagliano | 4/13/15 to 4/26/15 | Consulting | | | | | $1,500.00 |
| Andrea Amezcua | 4/13/15 to 4/26/15 | Consulting | | | | | $1,440.00 |
| Robert Tostado | | Security Guard | | | | | $200.00 |
| Dewayne Gatewood | | Security Guard | | | | | $300.00 |
| LSU Special Team Security | | Security Guard | | | | | $140.00 |
| David Rivera | | D. J. | | | | | $500.00 |
| **Totals for Independent contractors** | | | | | # | | **$4,080.00** |
| **Totals for Payroll & Independent Contractors** | | | **$15,520.01** | **$2,902.17** | # | **$18,422.18** | **$15,642.53** |
| | | | | | | | |
| **OUTSTANDING PAYROLL CHECKS** | | | | | | | |
| Sterlyng M. Powell | 1/5/15 to 1/18/15 | | | | | | $42.14 |
| Semajee M. Young | 1/5/15 to 1/18/15 | | | | | | $68.56 |
| Semajee M. Young | 1/19/15 to 2/1/15 | | | | | | $16.47 |
| Veronica Chavez | 2/23/15 to 3/1/15 | | | | | | $0.60 |
| Frank A. Bucci | 2/23/15 to 3/1/15 | | | | | | $0.40 |
| Julio Morales | 3/2/15 to 3/15/15 | | | | | | $331.29 |
| Shannon N. Moser | 3/2/15 to 3/15/15 | | | | | | $63.05 |
| Caroline C. Wilson | 3/16/15 to 29/15 | | | | | | $4.87 |
| Maria Theresa Lapitan | 3/16/15 to 29/15 | | | | | | $135.45 |

| | Celtic Pubs LLC | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Employee Name** | **Pay Period** | **Position** | **Gross Pay** | **Employer Taxes** | **E** | **Total Cost** | **Net Amount** | |
| Monica Ordonez | 3/16/15 to 29/15 | | | | | | $141.48 | $804.31 |
| Sterlyng M. Powell | 3/30/15 to 4/12/15 | | | | | | $426.90 | |
| Veronica Chavez | 3/30/15 to 4/12/15 | | | | | | $166.27 | |
| Shannon N. Moser | 3/30/15 to 4/12/15 | | | | | | $156.33 | |
| Valentine Becerral | 3/30/15 to 4/12/15 | | | | | | $111.27 | |
| Maria Theresa Lapitan | 3/30/15 to 4/12/15 | | | | | | $110.07 | |
| Frank A. Bucci | 3/30/15 to 4/12/15 | | | | | | $95.46 | |
| David J. Moscarello | 3/30/15 to 4/12/15 | | | | | | $78.34 | |
| Kathy G. Orozco | 3/30/15 to 4/12/15 | | | | | | $69.61 | |
| Monica Ordonez | 3/30/15 to 4/12/15 | | | | | | $41.58 | |
| Daniel Burnside | 3/30/15 to 4/12/15 | | | | | | $448.83 | $1,704.66 |
| **TOTAL FOR OUTSTANDING CHECKS** | | | | | | | $2,508.97 | |
| **TOTALS FOR PAYROLL** | | | $15,520.01 | $2,902.17 | # | $18,422.18 | $18,151.50 | |
| | | | | | | | | |
| | | | | | | **Total Payments to be Made:** | $18,151.50 | |

4/27/2015                                                                                                                                     2